RENDERED: DECEMBER 10, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-1138-MR

SIGNATURE HEALTHCARE, LLC; E.
JOSEPH STEIER; JEROME
BISCHOFF; JJLA, LLC; JOHN
HARRISON; LAS PALMAS SNF,
LLC; LP LOUISVILLE HERR LANE,
LLC, D/B/A SIGNATURE
HEALTHCARE AT JEFFERSON
PLACE REHAB AND WELLNESS
CENTER; LPSNF, LLC; SANDRA
ADAMS; SHC LP HOLDINGS, LLC;
SIGNATURE HEALTHCARE
CLINICAL CONSULTING
SERVICES, LLC; SIGNATURE
HEALTHCARE CONSULTING
SERVICES, LLC; AND TIMOTHY
TRAVIS                                                          APPELLANTS


|  | APPEAL FROM JEFFERSON CIRCUIT COURT |
| --- | --- |
| v. | HONORABLE AUDRA J. ECKERLE, JUDGE |
|  | ACTION NO. 19-CI-002524 |


MARY FARRIS, AS
ADMINISTRATRIX OF THE ESTATE
OF SHIRLEY MAE FARRELL                                          APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CLAYTON, CHIEF JUDGE; ACREE AND LAMBERT, JUDGES.

ACREE, JUDGE: Signature Healthcare appeals the Jefferson Circuit Court's August 21, 2021 opinion and order denying its motion to dismiss and compel arbitration with Mary Farris. Signature contends the circuit court erred in denying its motion because Farris had apparent authority to enter into the arbitration agreement. Finding no error, we affirm.

## BACKGROUND

Mary Farris is the niece and primary caregiver of Shirley Farrell. Farris lived with Farrell for over thirty years, shared a bank account, signed Farrell's checks, drove Farrell where she needed to go, and assisted her in making decisions. Yet, Farrell never granted Farris her power of attorney.

In 2018, Farrell fell down the steps in their home. After the fall, Farris drove Farrell to the emergency room where she signed the admission paperwork and consents for treatment on behalf of her aunt. The doctors diagnosed Farrell with a rib fracture and admitted her to the hospital. Her doctors discussed the need for rehabilitation. Ultimately, Farris and Farrell agreed she needed to transfer to Jefferson Place to undergo rehabilitation.

-2-

Prior to Farrell's arrival at Jefferson Place, Farris signed and executed the paperwork on behalf of her aunt. At the time of admission, she signed numerous documents, one of which was an arbitration agreement. Some documents Farris signed with "POA" following her name. However, the arbitration agreement did not indicate Farris was Farrell's attorney-in-fact.

Farris alleges that during Farrell's time at Jefferson Place, she developed a painful pressure ulcer that remained untreated, eventually became septic, and caused Farrell's death after being at Jefferson Place for only a month. The caregivers at the facility charted care for Farrell as if the pressure ulcer did not exist, raising an issue of false charting.

Farris, as the administratrix of Farrell's estate, brought an action against Signature Healthcare at Jefferson Place for claims of medical malpractice, wrongful death, breach of contract, and various other causes of action. Signature moved to dismiss the action and compel arbitration. It argued Farris had apparent authority to sign the arbitration agreement; therefore, Signature claimed, determination of the rights and obligations of the parties should be by arbitration and not by the courts.

The circuit court found Farris did not have the apparent authority to sign the arbitration agreement, nor did she have actual authority to bind Farrell to

-3-

an arbitration agreement; therefore, the arbitration agreement is unenforceable.

This appeal followed.

## STANDARD OF REVIEW

The issues raised by Signature on appeal are issues of law; therefore, our review is *de novo.  Carroll v. Meredith*, 59 S.W.3d 484, 489 (Ky. App. 2001).

## ANALYSIS

Although Kentucky law generally favors enforcement of arbitration agreements, *Kodak Mining Company v. Carrs Fork Corporation,* 669 S.W.2d 917, 919 (Ky. 1984), "the existence of a valid arbitration agreement as a threshold matter must first be resolved by the court." *General Steel Corp. v. Collins*, 196 S.W.3d 18, 20 (Ky. App. 2006) (emphasis omitted).  The court must determine whether an arbitration agreement is "valid, enforceable, and irrevocable, [based] upon such grounds as exist at law for the revocation of any contract."  KRS[1] 417.050.

Signature argues Farris had the apparent authority to sign the arbitration agreement on behalf of Farrell; therefore, it was entitled to rely on Farris' signature as binding on Farrell.  Apparent authority "is not actual authority but is the authority the agent is held out by the principal as possessing.  It is a matter of appearances on which third parties come to rely." *Mill Street Church of*

---

[1] Kentucky Revised Statutes.

*Christ v. Hogan*, 785 S.W.2d 263, 267 (Ky. App. 1990). Signature argues that at all relevant times, Farris repeatedly held herself out as the agent representing Farrell. She signed multiple documents with "POA" and Farrell knew her niece was acting on her behalf. Additionally, Farris and Farrell had a joint bank account, signed the checks, and signed Farrell's hospital admission paperwork.

This case is analogous to *Kindred Nursing Centers Limited Partnership v. Brown*, 411 S.W.3d 242, 249 (Ky. App. 2011). In *Brown*, the patient's mother did not have a guardianship or power of attorney of the patient, but she signed the paperwork for his admission to a nursing home. Included in that paperwork was a document agreeing to arbitrate rather than to litigate any claims against the nursing home. The trial court declined to enforce the arbitration agreement, and this Court affirmed. As in the case before us, the decisive issue was whether the patient's mother had the authority to enter into an agreement binding her son to arbitration. Here, we follow *Brown* and hold the niece did not have the authority to bind her aunt to arbitration.

An arbitration agreement is a waiver of a constitutional guarantee to a jury trial. U.S. CONST. amend. VII. As we have emphasized in past opinions, the significance of waiving a constitutional right "cannot be compared to tasks such as opening mail, paying bills, and depositing checks." *Diversicare Healthcare Services, Inc. v. Higgins*, No. 2014-CA-000601-MR, 2015 WL 509633, at *3 (Ky.

App. Feb. 6, 2015), *discretionary review denied* (Dec. 10, 2015). Signature had no prior course of dealings with Farris and Farrell such that a reliance on the former's apparent authority might be justified. Again, we emphasize that "[a]pparent authority . . . is the authority the agent is held out by the principal as possessing." *Mill Street Church*, 785 S.W.2d at 267. Farrell did nothing to hold out Farris as her agent. Farrell was not even present when Farris signed the documents upon which Signature bases its argument.

Additionally, when Farris signed the arbitration agreement, she did not "check" a box to indicate she possessed Farrell's power of attorney, nor did she indicate "POA" after her name. There was no evidence that Farris, or Signature, informed Farrell that she was waiving her right to a jury trial, or that Farrell knew the arbitration agreement was part of the admission packet. Based upon the foregoing, we can find no error in the circuit court's ruling that the arbitration agreement is unenforceable.

Signature also argues the circuit court improperly severed the wrongful death issue. We disagree. This circuit court was addressing the policy argument made by Signature, not severing an issue. It stated that *Ping v. Beverly Enterprises, Inc.*, 376 S.W.3d 581, 594 (Ky. 2012), settled the issue of wrongful death claims within arbitration agreements. We agree. The wrongful death claim accrues separately and cannot be bound by arbitration agreements. *Id.* at 599.

## CONCLUSION

Based on the foregoing, we affirm the Jefferson Circuit Court's August 21, 2021 opinion and order denying Signature's motion to compel arbitration.

ALL CONCUR.

BRIEFS FOR APPELLANTS:

Marc L. Breit
William K. Burnham
Louisville, Kentucky

BRIEF FOR APPELLEE:

Justin S. Peterson
Laraclay Parker
Alexandra DeMoss-Campbell
Lexington, Kentucky